IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
AT HARRISBURG

| | |
|---|---|
| DR. HIL RIZVI, M.D., ) | 4: CV 19-872 |
| ) | Docket No. 9 /2019 |
| Petitioner, ) | |
| vs. ) | Action for Injunctive Relief, |
| ) | (Permanent and *Pendent Lite*) |
| Department of Social Services, ) | Declaratory Judgment, |
| (State of Maryland), ) | Violation of 14th |
| Department of Children and Families, ) | Amendments Due Process, |
| (State of Massachusetts), *Kindes -und* ) | Negligence, and Damages |
| *Erwachsenenschutsbehorde* St. Gallen, ) | |
| Switzerland ("KESB"), *Bundesamt fur Justiz* ) | FILED |
| Switzerland *(BfD), et al.* ) | WILLIAMSPORT |
| Respondents. ) | MAY 21 2019 |
| | PER ___ DEPUTY CLERK |

## COMPLAINT

**COMES NOW**, Petitioner, pursuant to Federal Rules of Civil Procedure ('F.R.Civ. P.) Rule 3, and makes the following allegations against Respondents –allegations that are supported that expert opinions, transcript(s) and documentations/

I. **Subject Matter Jurisdiction**

1. This court has jurisdiction over this matter pursuant to 28 U.S.C. Section 1331 [Federal Question] and 28 U.S.C. Section 1332 [Diversity].

2. This matter includes parties from different U.S. states as well as a foreign party from Switzerland.

3. This cause of action involves the violation of Petitioner's parental rights as enshrined in the U.S. Constitution.

4. The financial damage visited by Petitioner by Respondents' actions, individually and collectively, exceeds seventy-five thousand dollars ($75,000.00).

II. **Venue**

5. Petitioner alleges and realleges the averments contained in the foregoing paragraphs 1 through 4.

6. Petitioner is domiciled in the greater Harrisburg area, and therefore this court is convenient and appropriate for him to bring this cause of action.

7. Respondents are all states and government institutions and would not be inconvenienced by defending this matter in this venue. Respondent KESB is a foreign entity that conspired with the co-Respondents to deprive Petitioner of his parental rights. Respondent KESB also has legal custody over Petitioner's minor children –against Petitioner's wishes or consent.

8. Petitioner is a medical doctor with more than twenty (20) years' experience as an emergency room physician. This means he has seen the effects of various types of drugs and drug-use and is familiar with the physical effects of these drugs on the human psyche.

9. Petitioner and his estranged wife are the parents of two minor females: Miriam N Rizvi, born June 5, 2001 (Maryland) [presently 17 years old] and Anna S Rizvi, born January 28, 2003 (Maryland) [presently 16 years old].

10. The averments in the foregoing paragraphs justify bringing this action in this court.

III. **Standing**

Petitioner alleges and realleges the averments contained in paragraphs 1 through 10.

11. Petitioner is the blood father of the minor children that are the subject of this matter.

12. The actions of Respondents, jointly and severally, have caused Petitioner to suffer concrete harm. As such Petitioner is constitutionally entitled to bring the herein action for injunctive relief. See, *Spokeo v. Robins*, 136 S.Ct. 1540 (2016).

IV. **The Actions of Respondent State of Maryland (Department of Social Services) Constitute a Denial of Petitioner's Parental Rights in Contravention of the Fourteenth Amendment of the U.S. Constitution**

13. Petitioner alleges and realleges the averments contained in the foregoing paragraphs 1 through 12.

14. Petitioner's both minor daughters, Anna Rizvi (hereafter "**A.R.**"), Miriam Rizvi ("**M.R.**") suffer from a restrictive form anorexia. Mother suffered from the same illness as a teenager. (See, Exhibit "**L**")

15. When A.R. was twelve (12) years old, Petitioner and his family (wife and 2 daughters) lived in Allegheny county, Maryland (USA). (2014)

16. In February (2014) Petitioner recognized A.R. was severely underweight and that her eating habits and mental condition required immediate intervention, resulting in him taking her to the emergency room. She was treated and released. This happened a second time.

17. Petitioner (a medical doctor) recognized that his daughter needed a more specialized treatment and made plans to admit her to the University of Pittsburgh Medical Center.

18. Unknown to Petitioner or his wife, Respondent Maryland Department of Social Services (hereafter "D.S.S.") showed up at A.R.'s primary school, stripped her naked, and took photos of her body which showed blotches and a few bruises – a condition consistent with underweight children who tend to bruise easily.

12. The actions of Respondents, jointly and severally, have caused Petitioner to suffer concrete harm. As such Petitioner is constitutionally entitled to bring the herein action for injunctive relief. See, *Spokeo v. Robins*, 136 S.Ct. 1540 (2016).

### IV. The Actions of Respondent State of Maryland (Department of Social Services) Constitute a Denial of Petitioner's Parental Rights in Contravention of the Fourteenth Amendment of the U.S. Constitution

13. Petitioner alleges and realleges the averments contained in the foregoing paragraphs 1 through 12.

14. Petitioner's minor daughter, Anna Rizvi (hereafter "**A.R.**"), suffers from a sever case of anorexia nervosa. Her mother suffered from the same illness as a teenager. (See, Exhibit "L")

15. When A.R. was twelve (12) years old, Petitioner and his family (wife and 2 daughters) lived in Allegheny county, Maryland (USA). (2014)

16. In February (2014) Petitioner recognized A.R. was severely underweight and that her eating habits and mental condition required immediate intervention, resulting in him taking her to the emergency room. She was treated and released. This happened a second time.

17. Petitioner (a medical doctor) recognized that his daughter needed a more specialized treatment and made plans to admit her to the University of Pittsburgh Medical Center.

18. Unknown to Petitioner or his wife, Respondent Maryland Department of Social Services (hereafter "D.S.S.") showed up at A.R.'s primary school, stripped her naked, and took photos of her body which showed blotches and a few bruises – a condition consistent with underweight children who tend to bruise easily.

19. D.S.S. showed up at Petitioner's residence, escorted by the police and demanded that he turn his daughter over to them so that she could be examined at the local emergency room. D.S.S. had scheduled a staged forensic examination.

20. After the forensic exam, D.S.S. took custody of A.R. and placed in a WVU Hospitals- Ruby Memorial (Morgantown, Maryland) x31 days (records show no critical need), after this taken to the home of a local sheriff and his wife foster care.

21. A.R. was afraid of large dogs, and Petitioner informed D.S.S. of this fact. However, A.R. was subjected to the constant fear associated with the foster home's large dog approaching her and licking her face.

22. A.R. was treated using family private insurance at Center for Discovery VA, then placed in 3 maryland foster homes over the course of nine (9) months, against her parents' objections, whereupon she was allowed to return home in September 2014 – although D.S.S. insisted that Petitioner be removed from the home. Their request was denied. Accordingly, from February 2014 to September 2014, A.R. was in the custody of Respondent D.S.S. There was no improvement in her condition.

23. In October 2014, Petitioner made arrangement (paid for by his insurance) and sent his wife and two (2) daughters to the Ronald McDonald House in Virginia which allowed the children to go to school there (Fairfax, VA) without further harassment from Maryland. Virginia recognizes the rights of parents and is less inclined to intervene in a situation where there is no physical or psychological abuse of the minor. Accordingly, Maryland had no jurisdiction over the children residing in Maryland.

24. The stress upon Petitioner's family was severe as D.S.S. continued to make allegations against Petitioner that was consistent with abuse.

25. Minor child A.R. was admitted to the Adolescent Medicine team at Children's National Medical Center suffering from anorexia nervosa, where she was treated by Dr. Tomas J. Silber, M.D., M.A.S.S. (Medical Director, Don Delaney Eating Disorders Program).[1] (See, Exhibit "I")

26. A.R. was discharged after intensive nocturnal nasogastric feeding and gradually increasing daily oral feeding. She was subsequently treated at the Center for Discovery Connecticut residential program. A.R. was also treated by Dr. Elizabeth Weaver at Prosperity Wellness (Herndon, VA) where she received the intensive Maudsley therapy program.

27. At some point, thereafter, A.R.'s treatment was disrupted when Respondent D.S.S. intruded into the matter and forbade contact between Anna and her father (Petitioner). Contact between A.R. and Petitioner was an essential part of the treatment, according to Dr. Silber.

28. The intrusion of D.S.S. interfered with an essential part of A.R.'s treatment which required parental participation in meal supervision. This disruption is particularly traumatic as A.R. has always been very close to her father (Petitioner). The actions of D.S.S. were at best negligent, and at worst intentional.

29. Dr. Silber observed that A.R. would respond better to treatment if she and Petitioner were able to connect; however, Respondent D.S.S. objected, although medical care and educational progress could be successfully managed by Petitioner and his wife, both of whom were healthcare professionals.

---

[1] Dr. Silber is Professor of Pediatrics and Professor of Global Health, George Washington University.

30. Respondent D.S.S. felt that the Petitioner and his wife were mistreating the minor children and made these allegations against Petitioner and his wife and refused to return the minors to their parents' custody.

31. The parents were forced to file a habeas petition with the court whereupon D.S.S. all allegations against Petitioner and his wife were dropped. (See, Exhibit "A")

32. After nine (9) months of CINA (Children In Need of Assistance) administrative hearings, Respondent D.S.S. dropped the allegations against Petitioner and his wife, and allowed the minor children to go home.

33. Petitioner's wife was so exasperated by the experience that Petitioner decided to allow his wife and two (2) daughters to move back to Switzerland (wife's native home) and get the children some additional therapy there from an insurance backed private facility.

34. The actions of Respondent D.S.S. violated Petitioner's rights of due process under the Fourteenth Amendment to the United States which holds that parental rights are fundamental rights that should not be trampled upon by the state.

35. Respondent D.S.S.'s actions were intentional and punitive in nature, and directly injured Petitioner and his family, particularly A.R. and M.R.

36. This court must find that the actions of D.S.S. were excessive, overreaching, punitive and constitutionally unlawful. How can Respondent D.S.S. abuse its authority by punishing Petitioner and his family because Petitioner and wife (both medical professionals) disagreed with the prescribed treatment which required forced measures. After DSS withdrew their allegations against the parents in their Maryland family administrative hearing, they persisted with their malfeasance, by collaborating with the Swiss authority KESB to start a new

administrative prosecution against fathers custody and un-consented abusive care in their cantonal jurisdiction. Underweight minors are there treated as recalcitrant juveniles. US expert Dr Silber does not agree. This egregious behavior by Respondent D.S.S. satisfies the claim of negligence and violation of the liberty interest of parental care of children implied under the Fourteenth Amendment of the U.S. Constitution.

V. **The Actions of Respondent State of Massachusetts, Department of Children and Families (D.C.F.) violated Petitioner's Parental Rights and Due Process under the Fourteenth Amendment of the U.S. Constitution, and directly harmed the Minor Children**

37. Petitioner alleges and realleges the averments contained in the foregoing paragraphs 1 through 36.

38. A.R. was allowed to return to Petitioner (May 2016) after he was forced to hire an attorney in Switzerland and sue to have his daughter released—after the Swiss government convinced Petitioner's wife to relinquish custody to the Swiss government.[2] (See, Exhibit "H")

39. Petitioner was forced to file a Hague Petition for Abduction with the U.S. State Department (August 2015) after the Swiss Central Authority, BfD authorized the KESB St. Gallen to take legal custody of the minors. (See, Exhibit "A"). No action was taken on the Hague Petition in contravention of the convention. (See, Exhibit "E").

40. May 2016, Petitioner argued in Swiss cantonal courts to return AR to the USA, she had markedly deteriorated in their care. She was allowed to return under

---

[2] The Swiss equivalent of D.S.S. contacted the Maryland D.S.S. and on the basis of the information they received pressured Petitioner's wife to relinquish custody of the minors to the state. Both minors were taken from the private treatment facility arranged by Petitioner and placed in state-sponsored public hostels (June 2015). This prompted Petitioner to file the Hague abduction petition.

Fathers custody. Petitioner enrolled A.R. in a school in New Hampshire where Petitioner resided. She had missed formal school in Europe 2015, 2016.

41. Petitioner then decided to enroll A.R. in an intensive treatment program in Boston, Massachusetts, where she regained all of the weight she lost in Switzerland.

42. A.R. was at the facility for twelve (12) weeks when Petitioner decided that she should return to New Hampshire to continue her schooling.

43. When Respondent KESB learned that Petitioner wanted to return A.R. to school in New Hampshire, it appointed a *guardian ad litem* ("**guardian**") in Switzerland to represent A.R and MR., although A.R. was a U.S. citizen and in the custody of her father in the United States.

44. The Swiss guardian contacted A.R. at the Boston facility and told her she was against A.R. leaving the facility and returning to school –although Petitioner opted to have A.R. treated on an out-patient basis. This was a clear interference in Petitioner's parental rights and trampled upon Petitioner's efforts to care for his daughter (who had regained her weight under his care).

45. The Swiss Child Protective Service contacted the treatment facility in Cambridge, Massachusetts CEDC, and informed them that both parents had legal custody, and that the mother's permission would be required before A.R. could be released.

46. On September 20, 2016 Respondent D.C.F. filed a petition for a Child In Need of Assistance order requesting the intervention of the state in preventing Petitioner from discharging A.R. from the treatment facility. (See, Exhibit "**J**") DCF *describing Petitioner as irresponsible and dangerous to his daughter's well-being because he opposed (disagreed with the treating psychiatrist) his daughter*

*being treated with a psychotropic drug which has a high risk for coma and sudden death.*

47. A hearing was held in the Cambridge Juvenile Court on September 23, 26, 2016 and October 5, 25, 2016 which resulted in a temporary order granting temporary custody to A.R.'s mother who then flew A.R. out of the country and back to Switzerland. (See, Exhibit "C").

48. The actions of Respondent D.C.F. violated Petitioner's fundamental parental right of due process as envisaged in the Fourteenth Amendment.

49. Respondents KESB and D.C.F. colluded against Petitioner and deprived Petitioner of his parental right. This action concretely harmed Petitioner and his family. Petitioner also suffered financially as he was forced to spend copious amounts of money to make some 15 trips to attempt to see his minor children.

50. Respondents KESB and D.C.F.'s actions directly harmed Petitioner and endangered A.R.'s health.

51. This Court should declare that Respondent D.C.F. was grossly negligent in allowing A.R.'s mother to take her back to Switzerland only to put her in a state-sponsored public facility that has not been successful in improving A.R. health and weight.

**VI.    The Actions of Respondent *Bundesamt fur Justiz* ("BfD") Violated the Hague Convention and Interfered With Petitioner's Constitutional Rights By Overreaching and Interfering With Petitioner's Parental Rights**

52. Petitioner alleges and realleges the averments contained in paragraphs 1 through 51.

53. Respondent BfD acknowledged receipt of Petitioner's *Application Under the Hague Convention on the Civil Aspects of International Child Abduction* on September 7, 2015. (See Exhibit "A")

54. The convention requires that the country that is a signatory to the convention (which Switzerland is) is required to respond to the application within six (6) weeks.[3]

55. As a result of Respondent BfD's violation of the convention, the minor children have been subjected to a treatment akin to imprisonment (state-sponsored confinement).

56. The minor girls were placed in the psych-ward and drugged—making them suicidal. They were never suicidal or cutting themselves before they were confined by the Swiss.

57. The Petitioner was prevented from having any contact with the minor children, which contributed to A.R.'s further deterioration. Both minor children have become completely estranged from their mother.

58. A.R.'s health continues to deteriorate, and she desires to return to the U.S., a desire she shared with the American Embassy official when they visited her in the in 2015. (See, Exhibit "**B**") Embassy officials noted that the staff was very worried about A.R.

59. M.R. remains confined to the public hostel to which she was placed. She has no money, is wearing second-hand clothes, and is living a life of street poverty. She has minimal relations with her mother and no guidance from father (Kesb guardian has set her on course to become "independent". From 2015-current many communications and multiple visits were blocked.

60. The entire poor treatment of minor girls are a direct result of Respondent BfJ's refusal to adhere to the requirements of the Hague Convention pursuant to the application submitted by Petitioner.

---

[3] *Hague Convention*, Article 11.

61. Respondents KESB and BfJ are liable jointly and severally for the mistreatment of the minor children.

62. This court must act to save the minor girls and to protect Petitioner's fundamental parental rights.

VII. **Respondents are liable jointly and severally for the violation of and infringement upon Petitioner's paternal rights and for damages to Petitioner's financial standing resulting from their individual and collective actions.**

63. Petitioner alleges and realleges the averments contained in paragraphs 1 through 62.

64. Respondents conspired with each other, made allegations of child abuse against Petitioner and his wife, and then conveniently dismissed them, but did not expunge them from all the files. As a result, when one Respondent requested an update of the matter involving the minor children, the allegations became the basis for further depriving Petitioner the right to visit his child, and constructively terminated Petitioner's paternal rights.

65. Respondents, jointly and severally, operated to block Petitioner's efforts to object to the administration of psychotropic drugs that had a high risk of coma and sudden death to his daughter and threatened him against opposing treatment.

66. Respondents, jointly and severally, undermined Petitioner's due process 14th amendment rights to exercise his rights as the parent of a minor child under U.S. law.

67. In April 2019, the Swiss national Federal Supreme Court - Bundesgericht, decided that it would not allow Petitioner to bring any further civil claims against KESB drugging orders in their partner psychward. Accordingly, this

matter is ripe before a U.S. federal court –this court and injunctive relief is required to bring the girls back home to their father.

**WHEREFORE**, Petitioner prays that this honorable court will enter an order consistent with the follow:

1. Order Respondents KESB and BfJ to remove minor girls from any and all psychiatric facilities and canton foster hostels and place them in a neutral environment until further resolution of this matter by this court;

2. Order the United States Department of State to prepare US passports that would allow the minor girls to return to the U.S.A;

3. Allow Petitioner to identify a facility close to his home with a treatment program that will assist in the rehabilitation of the minor children and assist them in transitioning to a normal family lifestyle;

4. Reserve judgment on the issue of damages, and

5. Whatever other relief this honorable court deems necessary and proper.

**Dated:** _____          _____
                                   **Dr. Hil Rizvi**
                                   **Petitioner**
                                   **USPS 523, Tyrone PA 16686**
                                   **Tel 240 727 2056**

**Certificate of Service**
**Dated May 21 2019** Defendants are served as follows

matter is ripe before a U.S. federal court –this court and injunctive relief is required to bring the girls back home to their father.

**WHEREFORE**, Petitioner prays that this honorable court will enter an order consistent with the follow:

1. Order Respondents KESB and BfJ to remove minor girls from any and all psychiatric facilities and canton foster hostels and place them in a neutral environment until further resolution of this matter by this court;

2. Order the United States Department of State to prepare US passports that would allow the minor girls to return to the U.S.A;

3. Allow Petitioner to identify a facility close to his home with a treatment program that will assist in the rehabilitation of the minor children and assist them in transitioning to a normal family lifestyle;

4. Reserve judgment on the issue of damages, and

5. Whatever other relief this honorable court deems necessary and proper.

**Dated:** 5-21-19

**Dr. Hil Rizvi**
**Petitioner**
**USPS 523, Tyrone PA 16686**
**Tel 240 727 2056**

**Certificate of Service**
**Dated May 21 2019** Defendants are served as follows
Switzerland -
Bundesratin Karin Keller-Sutter, Bundesamt fur Justiz
Kesb St Gallen
c/o Embassy of Switzerland
attn. Patricia Weber-Singh
2900 Cathedral Ave NW
Wash DC 20008

Secretary of Commonwealth Massachusetts          MA. DCF
Wm Francis Galvin

13

McCormack Bld
One Ashburton Place, 17th floor
Boston, Ma 02108

Secretary of State Maryland
John C Wobbensmith                    MARYLAND DSS
16 Francis St
Annapolis MD 21401